## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**WASHINGTON NATIONALS STADIUM, LLC**
1500 South Capitol Street, S.E.
Washington, D.C. 20003

        Plaintiff,

    **v.**

**ARENAS, PARKS AND STADIUM SOLUTIONS, INC.**
45 Nicole Ln.
Wingdale, New York 12594
Serve: Stephanie Boldis
      45 Nicole Lane
      Wingdale, NY 12594

And

**MAJESTIC FLOORING SOLUTIONS CORPORATION**
30 Ricky Road
Ronkonkoma, N.Y. 11779
Serve: Mr. Aaron Spinella
      11 2nd  Street, Suite 3
      Farmingville, NY 11738

**VINCENT CACCAMO**
45 Nicole Ln.
Wingdale, New York 12594

        Defendants.

Civil Action _____

## COMPLAINT

Plaintiff, Washington Nationals Stadium, LLC ("Plaintiff"), alleges the following Causes of Action against the Defendants Arenas, Parks and Stadium Solutions, Inc. ("APSS"), Majestic Flooring Solutions Corporation ("Majestic") and Vincent Caccamo ("Caccamo") as follows:

## NATURE OF THE ACTION

1.      This is an action for Breach of Contract, Fraud, Declaratory Relief, to Quiet Title and for release of a mechanic's lien wrongfully recorded against Nationals Park (the "Stadium"). The Stadium is owned by the District of Columbia and leased to the Plaintiff. The Plaintiff owns a leasehold interest in the District's property and as such, the lien can only be brought against that non-fee simple interest for obligations incurred by the Plaintiff. In addition, Defendant Majestic, as a subcontractor, is limited by the conditions and obligations of the Prime Contracts. As the work under the Prime Contracts was defective and no payments are due under the Prime Contracts the lien is defective and should be released or expunged from the records of the Recorder of Deeds. Further, as the Prime Contracts contain a provision indemnifying the Plaintiff from all claims, including attorneys' fees, the Plaintiff seeks its attorneys' fees and costs to litigate this Complaint. This action also seeks compensation for defective work and for fraud against Defendants and Caccamo for intentionally misrepresenting the ability, expertise and financial capability of the persons who would perform the work under the Agreement.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because at all relevant times there has been complete diversity of citizenship between Plaintiff and all Defendants, and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.      All parties to this action are subject to this Court's exercise of *in personam* jurisdiction.

4.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts giving rise to this action occurred in Washington, D.C.

## PARTIES

5.      Plaintiff, Washington Nationals Stadium, LLC is a limited liability company organized under the laws of the District of Columbia.   Plaintiff manages the home venue for the professional baseball franchise, the Washington Nationals Baseball Club, LLC.

6.      Defendant Arenas, Parks and Stadium Solutions, Inc., is a corporation organized under the laws of New York.

7.      Defendant, the Majestic Flooring Solutions Corporation, is a corporation organized under the laws of the State of New York that conducts business in the District of Columbia.

8.      Defendant Vincent Caccamo is a citizen of the State of New York.

## FACTS COMMON TO ALL COUNTS

9.      The Plaintiff contracted on August 12, 2013, November 11, 2013 and November 14, 2013 (collectively the "Prime Contracts") with APSS to apply a flake flooring system to designated areas of the Stadium's public areas, kitchens, concession areas and restrooms.   True and correct copies of the Prime Contracts are attached as "Exhibit A."

10.      Majestic was a subcontractor who supplied materials and labor to APSS which included flooring material.

11.      In the Prime Contracts, APSS agreed to comply with all local codes, ordinances, laws and regulations.   Under general guidelines included in the District of Columbia's Building

Code's adoption of the International Building Code, uses related to walking surfaces used by the public require a "slip resistant surface" under both wet and dry conditions.

12.     Following the initial installation, Plaintiff's officials were notified that several persons experienced a number of slips on the flooring system.   These incidents, among others, indicated that APSS' application was not slip resistant.

13.     Consequently, surfaces that presently exist in a number of areas of the Stadium, fail to meet:  (a) APSS's representations in the Prime Contracts; (b) the applicable express warranty that the product will be "free from defects;" (c) the Uniform Commercial Code of the District of Columbia's implied warranty of fitness for a particular purpose that the surface is appropriate for use during events at the Stadium; and (d) generally accepted standards in the construction industry.

14.     Plaintiff, pursuant to Section 20 of the November 11, 2013, Prime Contract Plaintiff has met with Caccamo, on behalf of APSS, in an effort to resolve the issues addressed in this Complaint, but was unsuccessful in achieving a resolution.   Plaintiff has also made multiple demands on APSS to cure the flooring defects, to no avail.  APSS, to date, has not: (a) remedied the defective flooring problems; (b) addressed how the problems can be remediated; (c) specified how the problems can be cured in an expeditious manner; and (d) proposed any solutions that will be within the terms of the Prime Contracts' price and financing terms.

15.     On September 30, 2014, Majestic filed a lien on the fee simple property owned by the District of Columbia, Square 0705, Lot 0016, with the address of  1500 South Capitol, S.E. (per tax assessment 1381 1st Street, S.E., Washington, D.C.).   Though Majestic named the Plaintiff in the lien, it did not file the lien against the Plaintiff's leasehold interest.

16.     The amount of the lien filed by Defendant Majestic is $532,262.64.

17.     The lien alleges that Defendant provided goods and services for the Stadium after being hired as a subcontractor by APSS.  It further alleges that the Stadium has not paid it $532,262.64 for the goods and services it provided as a subcontractor to APSS.

18.     Under certain of the Plaintiff's third party agreements, unless the mechanic's lien is released or satisfied, the Plaintiff may be considered to be in default under these agreements.

19.     As the flake floor material and applications do not meet the requirements of the intended purpose at the Stadium, such non-conformity may now have, and continue to have in the future, a significant impact on the ability to use the Stadium as intended.

20.     Prior to the Majestic lien, another subcontractor to APSS, the Rust-Oleum Corporation filed a lien against the Stadium on May 2, 2014 in the amount of $671,302.39.  In order to have this lien removed, Plaintiff incurred costs, namely attorneys' fees and staff time to have this improper lien released.

## CAUSES OF ACTION

### COUNT I
### (APSS: Breach of Contract)

21.     The allegations in paragraphs one through 20 are incorporated herein.

22.     In the Agreement, APSS agreed to comply with all local codes, ordinances, laws and regulations.

23.     Under general guidelines included in the District of Columbia's Building Code adoption of the International Building Code, uses related to walking surfaces used by the public require a "slip resistant surface" under both wet and dry conditions.

24.     APSS has materially breached the Agreement as it has: 1) failed to satisfy its representations in the Agreement, including an applicable express warranty that the flooring product installed in the Washington Nationals Stadium will be "free from defects;" and 2) failed

to satisfy the implied warranty of fitness and purpose that the surface is appropriate for use during events at the Stadium.

25.     As a direct proximate cause of APSS's breaches, certain areas in the Stadium do not meet the slip resistant standard included in the local and international building codes as well as the express representations in the Agreement.   In addition, sections installed by the Defendants are discolored, spotted or appear dirty.   The Plaintiff has incurred significant costs to correct other defects related to the installation.   This includes flooring installed into the Stadium's elevator carriages, which came loose and were thereafter dispersed throughout the Stadium causing the Plaintiff to incur clean-up costs.   Also, loose flakes have collected in drains causing flooding and water pipes to burst and flood elevator pits.

26.     As a result of the Defendants' breaches the Plaintiff has incurred damages in excess of $75,000.

## COUNT II
### (Majestic:  Quiet Title to District's Fee Simple Property)

27.     The allegations in paragraphs one through 26 are incorporated herein.

28.     The real property that is the subject of this suit is located in the District of Columbia.

29.     The Defendant's lien is a cloud on the title of the District of Columbia's fee simple property and Majestic has no legal or equitable right, claim or interest in said property.

30.     A mechanic's lien in the District of Columbia attaches only to privately owned property and does not attach to public buildings or other public property developed for public use.

31.     In addition, Majestic has no basis for asserting a lien right against the District's property as it is not in privity with the Plaintiff or the District.

6

32.     Plaintiff requests a declaration that the title to the subject property is vested in the District of Columbia alone and that Majestic be declared to have no lien, estate, right, title or interest in the District's property, that the cloud on title should be removed and the real property be released from Majestic's claim of lien.

**COUNT III**
**(Majestic:  Quiet Title to Plaintiff's Leasehold)**

33.     The allegations in paragraphs one through 32 are incorporated herein.

34.     APSS has materially breached the Prime Contracts and is in default under the terms of the Prime Contracts.  APSS has also failed to satisfy the terms of the Prime Contracts to install a flooring product in the Stadium that will be "free from defects."

35.     As a direct and proximate cause of APSS' bad workmanship Plaintiff has a set off against any monies owed to APSS, and, therefore to Majestic.

36.     As further grounds to release the lien, Plaintiff does not owe the monies addressed in the lien as the Plaintiff has not failed to make any of the payments governed under the Prime Contracts.  Under these Contracts Plaintiff was to make six annual installments on January 31st of each year beginning in 2014 and ending in 2019.  Plaintiff has made the first payment and is not obligated to make any additional payment until January 31, 2015.  Therefore nothing is owed under the Prime Contracts at this time.

37.     Majestic's lien is a cloud on the title of the Plaintiff's leasehold interest  and is without any right whatsoever, as Majestic has no legal or equitable right, claim or interest in said property.

38.     Majestic has no basis for asserting a lien right against the Plaintiff's leasehold as nothing is presently owed to APSS.

39.     Plaintiff requests a declaration that the title to the subject leasehold is vested in the Plaintiff alone and that Majestic Defendant be declared to have no lien, estate, right, title or interest in the Plaintiff's leasehold, that the cloud on title should be removed and the leasehold be released from Majestic's claim of lien.

### COUNT IV
### (Caccamo and Majestic: Fraud and Conspiracy to Defraud)

40.     The allegations in paragraphs one through 39 are incorporated herein.

41.     Defendant Caccamo was the point person for negotiating the APSS prime contracts with the Plaintiff.

42.     During these negotiations, Caccamo represented that: 1) APSS had the expertise and labor necessary to perform under the contracts; and 2) APSS had the financial capability of performing under the financial terms of the Agreements, specifically agreeing to payment for the Agreement being in five annual fixed payments.

43.     After entry of the Agreements, the contractors began to mobilize their material and labor at the Stadium site.  During that pre-work mobilization the Stadium's head of operations noticed that the trucks at the site had the name of "Majestic Flooring Solutions Corp." When the head of operations inquired why "Majestic" trucks were appearing on-site, Caccamo told him that APSS had bought the equipment out of bankruptcy and reassured the operations head that all material and labor would be provided by APSS.  In fact this was not true, in that APSS acted as a front for Majestic, APSS had not purchased Majestic' trucks and equipment out of a Majestic bankruptcy proceeding and did not  have the expertise or experience necessary to perform the work.

44.     During Majestic's work on the site, in order to hide the fraud, Majestic laborers signed into the Stadium work site as working for "APSS."  This was in fact untrue and was part

of a conspiracy between Majestic and Caccamo to win the project and perform under false pretenses.

45.     Plaintiff justifiably relied upon Caccamo and Majestic's misrepresentations.

46.     As a result of the Defendants' fraud, the Plaintiff has suffered monetary damages including inferior workmanship, having multiple liens filed against the Stadium's lessor, the District of Columbia, correcting the unsatisfactory work performed by APSS and Majestic, and having to defend itself under two  separate mechanic's liens.

47.     As Caccamo and Majestic intentionally and maliciously misled the Plaintiff in order to enrich themselves, punitive damages should be assessed against them.

## COUNT V
### (Indemnification by APSS and Majestic)

48.     The allegations in paragraphs one through 47 are incorporated herein.

49.     Under paragraph 19 of the Prime Contracts the prime contractor, APSS is obligated to indemnify the Plaintiff from all losses, claims and attorneys' fees arising out of the Prime Contracts.

50.     Accordingly, APSS is liable to the Plaintiff for damages sustained by the lien, including without limitation, its attorneys' fees and costs to prosecute this quiet title action.

51.     As a subcontractor Majestic is subject to the terms and conditions of the Prime Contracts.

52.     Accordingly, Majestic is liable to the Plaintiff for damages sustained by the lien, including without limitation, its attorneys' fees and costs to prosecute this quiet title action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendants as follows:

A.    Against Defendants, jointly and severally for compensatory damages, consequential damages, indemnification of Plaintiff's attorney fees necessitated by this action, pre- and post-judgment interest, and punitive damages, all in an amount in excess of $75,000;

B.    For a declaration and determination that the lien constitutes a cloud on the title of the District of Columbia and the Plaintiff's leasehold and Majestic be declared to have no estate, right, title or interest in the property at issue or in the Plaintiff's leasehold;

C.    For an Order compelling Majestic to release its lien;

D.    For a judgment enjoining the Defendants from claiming any lien, estate, right, title or interest in either the property or the leasehold;

E.    For indemnification for damages proximately caused by the cloud on title;

F.    For indemnification of Plaintiff's attorneys' fees and costs incurred in this action;

G.    For any further relief that is just and proper.

DATED:  October 27, 2014                    Respectfully submitted,

**MARTIN & GITNER PLLC**

_____
Geoffrey P. Gitner      (D.C. Bar No. 25338)
William R. Martin      (D.C. Bar No. 465531)
Sasha Battle (D.C. Bar No. 976342)
2121 K Street, N.W., Suite 850
Washington, D.C. 20037
(202) 331-2121
Geoff.Gitner@MartinGitnerLaw.com

*Counsel to the Plaintiff*